UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SEAN SWEENEY,
    Plaintiff,

v.

ENFIELD BOARD OF EDUCATION,
    Defendant.

No. 3:14-cv-01511 (MPS)

## MEMORANDUM OF DECISION

### I. INTRODUCTION

Plaintiff Sean Sweeney ("Sweeney") brought this action against the Enfield Board of Education ("EBE") and the Enfield Teacher's Association ("ETA") in Connecticut Superior Court. The complaint contained three counts: (1) a claim that the EBE breached the Collective Bargaining Agreement ("CBA") with Sweeney; (2) a claim under 42 U.S.C. § 1983 that the EBE denied Sweeney substantive and procedural due process; and (3) a claim that the ETA breached its duty of fair representation by refusing to submit Sweeney's grievance to arbitration. The ETA moved to dismiss the third claim for lack of subject matter jurisdiction. The Superior Court granted the ETA's motion, and the ETA was dismissed as a defendant in the case. The EBE then removed the case to federal court on October 14, 2014, and now moves to dismiss Count One of the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF Nos. 6 and 12.)

As set forth below, EBE's motion to dismiss and supplemental motion to dismiss are GRANTED. This Court lacks subject matter jurisdiction over Count One because Sweeney has failed to exhaust his administrative remedies.

## II.     BACKGROUND

Sweeney has been employed by the EBE as a teacher at Fermi High School in Enfield, Connecticut since 2001. (Compl., ECF No. 1-1 at 1.) In June 2013, students reported that, while Sweeney was supervising the cafeteria during a lunch period, he told several students that he was "going to kill them" and called one student a "dumb ass" when he asked them to pick up their garbage. (*Id.* at 2.)

Sweeney denied this account and told the EBE that he did not use the term "dumb ass" with the students, nor did he say that someone would be "dead" if the students failed to pick up their garbage. (*Id*.) According to Sweeney, he approached the students at their lunch table and said, "Guys, there is not going to be garbage left under this table like yesterday, right?" The students looked at him and said nothing. Then Sweeney said, "Because you guys know who cleaned it up?" (*Id*.) He then pointed to himself with both thumbs and said, "This dummy did." (*Id*. at 2-3.) Sweeney alleges that the students "did not say anything but laughed and snickered." (*Id*. at 3.) Sweeney then said, "C'mon guys, you are going to get me killed by the lunch ladies." (*Id*.) The students still said nothing. Finally, Sweeney stated, "If there is garbage left there again someone is going to the office." Sweeney alleges that he then walked away. (*Id*.)

On June 11, 2013, the EBE placed Sweeney on paid administrative suspension for the remainder of the academic year for his alleged conduct. While he was suspended, he was unable to communicate with his students, administer exams, or coach the varsity softball team. (*Id.* at 2-3.) On October 7, 2013, Sweeney was again suspended—this time without pay for twenty work days—as a result of the same incident. (*Id*. at 3.) Sweeney alleges that these suspensions were issued without just cause and therefore breached the "just cause" provision of the CBA, which states:

2

> No teacher shall be suspended, or otherwise denied compensation as a disciplinary matter without just cause. A teacher suspended or otherwise denied compensation as a disciplinary matter shall receive advanced notice of the suspension or denial of compensation and shall be entitled to receive a specific statement of reasons in writing and have representation from the [ETA].

(*Id*. at 2.) Sweeney alleges that this breach of contract caused him monetary damages in the amount of $7,199.00 for the twenty days of lost pay; damage to his credit rating due to his inability to pay his mortgage and other debts on time; damage to his professional and community reputation; and "damages for embarrassment, humiliation and frustration for being wrongfully punished and publicly ridiculed by" the EBE. (*Id*. at 5.)

Because Sweeney is a member of the ETA, his employment is governed by the CBA between the ETA and the EBE, which covers the period from July 1, 2011, to June 20, 2014. (*Id*. at 1.) The CBA states that the ETA is "the exclusive representative of all the certified professional personnel," which includes teachers. (Def.'s Mot. to Dismiss Ex. A, ECF No. 6-2 at 1.)[1] The CBA defines "grievance" as "the misapplication or misinterpretation of a specific term of" the CBA. (*Id.* at 7.) The grievance procedure has four levels that must be exhausted. (*Id*. at 7-10.) Level One requires the teacher to discuss his grievance with his principal or immediate supervisor. (*Id*. at 8.) At Level Two, if there has been no action within ten days or the aggrieved person is dissatisfied with the disposition, the grievant may submit a written grievance directly to the Superintendent of Schools (on his own) or through the ETA. (*Id*.) For Level Three, if there has been no action within ten days or the aggrieved person is dissatisfied with the disposition, the grievant may file a written grievance with the EBE through the ETA. (*Id*. at 9.) At Level Four, if there has been no action within thirty days or the aggrieved person is dissatisfied with the disposition, the grievant may request, in writing, that the Chairperson of the ETA's Professional

---

[1] Although the remaining facts cite the exhibits in the EBE's motion to dismiss, Sweeney does not dispute these facts. In fact, his brief in opposition to the motion to dismiss cites several of the EBE's exhibits.

3

Rights and Responsibilities ("PR&R") Committee appeal the grievance to the American Arbitration Association ("AAA"). (*Id.*) Within ten school days after the member's request, "if the [ETA] determines that the grievance is meritorious, it may submit the grievance to [binding] arbitration with a written copy to the [EBE]." (*Id*).

On October 24, 2013, Sweeney initiated the grievance procedure at Level Two when his attorney wrote to Christopher Dreszek ("Dreszek"), the Deputy Superintendent of Enfield Public Schools ("EPS"), to request a hearing on his twenty-day suspension without pay and his removal as varsity coach of the girls' basketball and softball teams for the 2013-2014 school year. (Def.'s Mot. to Dismiss Ex. C at 1.) Dreszek and Jeffrey Schumann ("Schumann"), Superintendent of EPS, held a Level Two hearing on November 12, 2013, which Sweeney attended without counsel or ETA representation. (Def.'s Mot. to Dismiss Exs. D and E.) At the conclusion of the hearing, Schumann found that Sweeney was unable to identify and substantiate a specific violation of the CBA, and subsequently denied his grievance in a letter dated November 18, 2013. (Def.'s Mot. to Dismiss Ex. D.) On November 25, 2013, Sweeney wrote to the ETA to initiate Level Three proceedings, arguing that the EBE violated Article 3 of the CBA by suspending him without "just cause." (Def.'s Mot. to Dismiss Ex. F.) The ETA then referred Sweeney's grievance to the EBE, which held a hearing on December 17, 2013. (Def.'s Mot. to Dismiss Ex. G.) Sweeney represented himself at the hearing. (Def.'s Mot. to Dismiss Ex. H.) The EBE denied Sweeney's grievance in a letter dated December 18, 2013, because it determined that there was just cause to suspend Sweeney for twenty days without pay, and that coaching matters were governed by Board Policy 4115.3, and not by the CBA. (*Id.*) The ETA's PR&R Committee notified EPS by letter dated January 30, 2014, that it declined to submit Sweeney's grievance to arbitration (Level Four). (Def.'s Mot. to Dismiss Ex. I.) On February 12, 2014,

4

Sweeney's attorney wrote to Dreszek directly and requested binding arbitration with the EBE. (Def.'s Mot. to Dismiss Ex. J.) The EBE again denied Sweeney's request to proceed to arbitration in a letter dated February 18, 2014, noting that the CBA provides that only the ETA—not an individual teacher—may submit a grievance to arbitration, if it determines that the grievance is meritorious. (Def.'s Mot. to Dismiss Ex. K.)

On October 17, 2014, Sweeney filed a complaint for breach of the duty of fair representation against the ETA with the State Board of Labor Relations ("SBLR"). (Pl.'s Opp'n Br., ECF No. 20 at 3.) The SBLR scheduled a hearing conference on the complaint for December 10, 2014, and has not yet issued a decision. (*Id*.)

### III.   STANDARD

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations and quotation marks omitted).

### IV.   DISCUSSION

The Court lacks subject matter jurisdiction over Count One because Sweeney has failed to exhaust his administrative remedies.

Sweeney argues that the CBA does not state that the grievance process is the exclusive remedy for an employee with a "just cause" claim, and in any event, he "fully exhausted his

remedies" for his claim that the EBE breached the CBA "by requesting the opportunity to arbitrate his claim," which was denied. (Pl.'s Opp. Br, ECF No. 20 at 1.) Further, Sweeney argues that he had a separate cause of action against the EBE for breach of the CBA, and therefore the Connecticut General Statutes do not require him to bring a claim against the ETA with the SBLR before filing a lawsuit against the EBE. (*Id.* at 1-2.) Alternatively, Sweeney argues that, to the extent that bringing a SBLR claim is a prerequisite, the Court should reserve ruling on this motion to dismiss until the SBLR issues a decision on Sweeney's claim that the ETA breached its duty of fair representation.[2] (*Id.* at 4.)

Sweeney argues that the CBA does not state that the grievance process is the exclusive remedy for an employee with a "just cause" claim against the union. Sweeney cites no authority for this argument, however. In fact, "where nothing is said in the collective bargaining agreement about exclusivity, the agreement is considered to be the exclusive remedy." *Saccardi v. Bd. of Educ. of the City of Stamford*, 45 Conn. App. 712, 720 (1997); *accord Neiman v. Yale Univ.*, 270 Conn. 244, 258 n. 2 (2004). The Connecticut Supreme Court explained the reason for the presumption of exclusivity:

> The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it . . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be

---

[2] Sweeney also argues that EBE's motion to dismiss is procedurally defective because it is not supported by an affidavit from an EBE representative attesting to its factual allegations; but EBE's motion incorporates by reference an affidavit filed by the previously dismissed defendant ETA, which is part of the record and provides some relevant facts, and Sweeney in any event does not contest any of the factual assertions in EBE's motion to dismiss. Sweeney also argues that the Court should deny the motion because the EBE submitted an unsigned copy of the CBA "with no attestation that this is a true and authentic copy of the agreement." (Pl.'s Opp. Br., ECF No. 20 at 5.) Sweeney, however, bases Count One on a breach of the CBA and cites the version of the CBA that the EBE attached to its brief; he does not argue that a different version of the CBA was in effect. Moreover, the EBE has submitted evidence—also uncontested—that the CBA was the product of an arbitration award, rather than a negotiated and signed agreement. (Def.'s Reply Br., ECF No. 21 at 1-2 n. 1; *id.* Ex. L.)

> made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements.

*Hunt v. Prior*, 236 Conn. 421, 431-32 (1996); *see Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653 (1965) (same). Therefore, the grievance process is the exclusive remedy for a teacher under the CBA.

"[I]t is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Saccardi*, 45 Conn. App. at 715-16. Sweeney contends that there is nothing in the CBA that specifically states that an employee does not have a right to file a lawsuit against the EBE, "once the grievance process ends." (Pl.'s Opp. Br., ECF No. 20 at 5-6.) But even if Sweeney has exhausted his grievance and arbitration procedures under the CBA—and it is not clear that he has—he has not completely exhausted his administrative remedies under the Connecticut statutes. The CBA states that only the ETA—not individual teachers—may bring Level Four arbitration proceedings against the EBE. After learning that the ETA declined to refer Sweeney's grievances to arbitration, Sweeney's lawyer contacted the EBE directly and "request[ed] the opportunity to resolve his grievance through binding arbitration" with the EBE. (Def.'s Mot. to Dismiss Ex. J.) Sweeney claims that he fully exhausted his administrative remedies against the EBE for breach of the CBA when he requested—and was denied—the opportunity to engage in arbitration. (Pl.'s Opp. Br., ECF No. 20 at 5.) Under the terms of the CBA, however, Sweeney does not have a right to engage in arbitration with the EBE. "Where the collective bargaining agreement permits only the union to take a grievance to

arbitration, the employee has no further remedy unless he can prove that the union breached its duty of fair representation by acting arbitrarily, maliciously, or in bad faith." *Saccardi*, 45 Conn. App. at 722.

To prove that the union breached its duty of fair representation, Connecticut General Statute §10-153e requires that the " employee . . . file a written complaint with the SBLR," which then decides whether the union acted in bad faith when it denied the employee's request to proceed to arbitration. Conn. Gen. Stat. §10-153e(e).[3] The statute also provides for an appeal from the SBLR's order: "[a]ny party aggrieved by a final order of the Board of Labor Relations granting or denying in whole or in part the relief sought may appeal . . . to the superior court" under the Uniform Administrative Procedure Act. Conn. Gen. Stat. § 10-153e(g)(4) (footnote omitted). Because the SBLR has not yet decided whether the ETA breached its duty of fair representation, Sweeney has not exhausted his administrative remedies, and this Court does not have subject matter jurisdiction over Count One.

Sweeney also argues that Conn. Gen. Stat. §10-153e(e) does not specifically *require* that employees first bring their breach of CBA claims to the SBLR. But as the EBE points out, the statute does not address breach of contract claims at all. Therefore, it is inconsequential that the statute does not require any specific action of employees with such claims. Finally, Sweeney argues that the Court should simply reserve ruling on this motion until the SBLR issues a decision on his claim for breach of the duty of fair representation against the ETA. (Pl.'s Opp. Br., ECF No. 20 at 8.) "The Connecticut Supreme Court has recognized on multiple occasions

---

[3] Conn. Gen. Stat. §10-153e(e) provides, in relevant part:
   whenever a certified employee believes a breach of the duty of fair representation under subdivision (3) of subsection (c) of this section has occurred or is occurring, such . . . certified employee shall file a written complaint with the State Board of Labor Relations and shall mail a copy of such complaint to the party that is the subject of the complaint.

8

that an aggrieved party must exhaust its administrative remedies *before* it may seek judicial relief." *Holt v. Town of Stonington*, 765 F.3d 127, 132 (2d Cir. 2014) (internal quotation marks omitted) (citing cases). Because this Court does not have jurisdiction over Sweeney's breach of contract claim, Count One must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the EBE's motion to dismiss Count One is GRANTED. Count Two, Sweeney's claim that the EBE denied Sweeney substantive and procedural due process under 42 U.S.C. § 1983, may proceed. "[T]he plaintiff in a Section 1983 action is not required to exhaust her administrative remedies before bringing suit." *Gupta v. City of Norwalk,* No. 3:98–CV–2153 AWT, 2007 WL 988692, at *4 (D. Conn. Mar. 31, 2007) (citing *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496 (1982)).

IT IS SO ORDERED.

      /s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
             August 10, 2015